# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

_____

Nº 10-CV-0121 (JFB)
_____

RAYMOND FIGUEROA,

Petitioner,

VERSUS

PHILIP D. HEATH, SUPERINTENDENT OF SING SING C.F.,

Respondent.

_____

MEMORANDUM AND ORDER
May 13, 2011
_____

JOSEPH F. BIANCO, District Judge:

Raymond Figueroa ("petitioner" or "Figueroa") petitions this Court for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, to vacate his conviction entered on January 19, 2005, in the County Court, Suffolk County (the "trial court"), for Criminal Possession of a Controlled Substance in the Second Degree (N.Y. Penal Law § 220.18), Criminal Possession of a Controlled Substance in the Third Degree (N.Y. Penal Law § 220.16), Criminal Possession of a Controlled Substance in the Fourth Degree (N.Y. Penal Law § 220.09), and Criminal Possession of a Controlled Substance in the Seventh Degree (N.Y. Penal Law § 220.03). Petitioner was sentenced to seven separate determinate terms of imprisonment totaling eighteen years.

Figueroa challenges his conviction on the grounds that both his trial counsel and his appellate counsel were ineffective. For the reasons set forth below, the petition for a writ of habeas corpus is denied in its entirety on the merits.

## I. BACKGROUND

### A. Underlying Facts

The following facts are adduced from the instant petition and underlying record.

#### 1. November 22, 2003 Arrest

On November 22, 2003, Detectives William Maldonado ("Maldonado"), James Smith ("Smith"), and Detective Sergeant Kenneth Hamilton ("Hamilton") were conducting surveillance for narcotics activity in the parking lot of the "Coeds Bar" in Ronkonkoma, New York. (Tr. at 31-32.)

The officers observed petitioner exit a vehicle parked in the lot and walk toward the establishment's entrance. (*Id.* at 34.) Petitioner met an individual who had exited the bar, and the two engaged in a hand-to-hand transaction. (*Id.* at 34-35.) Petitioner then returned to the vehicle, which exited the parking lot shortly thereafter. (*Id.* at 34, 37.) Detectives Maldonado, Smith, and Hamilton, believing they witnessed a narcotics transaction, followed the vehicle. (*Id.* at 37.)

The officers pulled the vehicle over for failing to signal while making a turn. (*Id.* at 37.) Maldonado approached the car and looked inside while speaking with the driver. (*Id.* at 38-39.) Maldonado observed what appeared to be crack cocaine on top of a CD holder located next to petitioner on the rear passenger seat, and he ordered the vehicle's occupants to exit the vehicle. (*Id.* at 39.) Maldonado then recovered the substance from the car. (*Id.*) Around this time, two police K-9 units arrived on-scene after driving by and observing the stop. (*Id.* at 40.) The K-9 officers helped secure the vehicle's occupants while Maldonado field-tested the recovered substance and Hamilton searched the vehicle. (*Id.* at 40-41.) After the field test of the recovered substance came back positive for cocaine, Maldonado placed all of the vehicle's occupants under arrest. (*Id.* at 69.) Maldonado then conducted a pat-down search of petitioner before placing him in the police vehicle and transporting him to the precinct. (*Id.* at 43-44.)

Upon arrival at the police precinct, Maldonado conducted a more thorough search of petitioner. (*Id.* at 44-45.) During the search, Maldonado felt a bulge in front of petitioner's pelvic area. (*Id.* at 45.) As Maldonado attempted to remove the bulge, petitioner reached down, grabbed the item, and threw it in a trash can. (*Id.*) Maldonado

recovered the item, which tested positive for cocaine. (*Id.* at 46, 166.)

2. December 11, 2003 Arrest

On December 11, 2003, Detectives Maldonado, Smith, James Walker ("Walker"), and John Pinscotta ("Pinscotta"), and Detective Sergeant Hamilton were conducting a burglary investigation in Patchogue, New York. (*Id.* at 49-50.) While surveilling a house located at 206 Waverly Avenue, the officers observed a vehicle pull into the house's driveway. (*Id.* at 50.) The subject of the burglary investigation, Jason Schwab, exited the residence and approached the vehicle. (*Id.* at 50, 80-81.) Maldonado then observed Schwab engage with the vehicle's passenger in a hand-to-hand transaction, during which Maldonado believed he saw currency exchanged. (*Id.* at 51-52.) The passenger wore a yellow sweatshirt but was otherwise unidentifiable at that time by Maldonado. (*Id.* at 97-98.) After the hand-to-hand transaction was completed, Schwab returned to the residence, and the vehicle pulled out of the driveway and proceeded down the street. (*Id.* at 52-53.) Maldonado, having observed what he believed was a narcotics transaction, radioed Walker and Smith to stop the vehicle and investigate further. (*Id.* at 53.)

Detectives Walker and Smith stopped the vehicle after receiving the radio transmission from Maldonado. (*Id.* at 106.) As Walker approached the vehicle's passenger side, he observed the passenger, who was wearing a yellow-hooded sweatshirt, gesture towards his mouth with his right hand. (*Id.* at 106-07.) Walker believed that the passenger, later identified as petitioner, was trying to destroy evidence by swallowing narcotics. (*Id.* at 107, 109.) When Walker asked petitioner to exit the vehicle, petitioner ignored the request and

turned away from Walker. (*Id.* at 108.) Walker placed his hand on petitioner's shoulder and again asked petitioner to exit the vehicle, which petitioner did after Walker opened the vehicle's door. (*Id.*) Upon exiting the car, petitioner immediately pressed his pelvis against the vehicle so that his entire body was pressed against the side of the car. (*Id.*) Fearing that petitioner was trying to hide a weapon, Walker reached in and patted petitioner's waistband. (*Id.* at 109-10.) Feeling nothing, Walker asked petitioner to turn around. (*Id.* at 110.) As Walker asked petitioner to open his mouth so Walker could check for drugs, Hamilton, who was standing next to Walker, observed a plastic bag protruding from petitioner's waistband. (*Id.* at 110-11.) Hamilton removed the bag, which held smaller bags containing a white substance that appeared to be cocaine. (*Id.* at 111.) Walker then placed petitioner under arrest, secured the evidence, and conducted a cursory search of petitioner's person. (*Id.* at 111-16.) Walker found no weapons or other items on petitioner during this initial search, and the officers subsequently transported petitioner to the police precinct. (*Id.* at 115-16.)

After arriving at the precinct, Walker placed petitioner in an interview room and handcuffed him to a desk. (*Id.* at 116.) Walker then left the precinct to assist Maldonado and another detective in apprehending Jason Schwab. (*Id.*) Approximately 20 minutes later, Walker returned to the precinct where petitioner was still handcuffed in the interview room. (*Id.* at 117.) Petitioner asked to use the restroom and was escorted there by Walker. (*Id.*) Once in the restroom, Walker removed the handcuffs and conducted a more thorough search of petitioner's person. (*Id.* at 117-18.) During this search, Walker removed from petitioner's buttocks area a paper towel that contained two baggies filled with what appeared to be cocaine. (*Id.* at 118-19.)

Later that afternoon, petitioner asked to be brought to the hospital because he ingested a quantity of cocaine during the traffic stop and was not feeling well. (*Id.* at 122.) Walker accompanied petitioner to Brookhaven Memorial Hospital where petitioner spontaneously made several statements regarding his involvement with cocaine and his willingness to cooperate. (*Id.* at 122-25.)

## B. Procedural History

On January 19, 2005, the jury found petitioner guilty on four counts of Criminal Possession of a Controlled Substance in the Third Degree, one count of Criminal Possession of a Controlled Substance in the Seventh Degree, one count of Criminal Possession of a Controlled Substance in the Second Degree, and one count of Criminal Possession of a Controlled Substance in the Fourth Degree. (Tr. at 333-36.)

Petitioner was sentenced on February 22, 2005 to a determinate term of imprisonment of eighteen years. Specifically, petitioner was sentenced to eight years on counts one and two, one year on count three, ten years on counts four through six, and six years on count seven. The sentences on counts one through three were to run concurrently with each other. The sentences on counts four through seven also would run concurrently with each other but would run consecutively to counts one through three. *See People v. Figueroa*, Ind. No. 00778-2004, slip op. at 1 (N.Y. County Ct. Suffolk Cnty. Dec. 16, 2008). (*See also* Resp't Answer ¶ 4.)

Petitioner appealed his conviction to the Appellate Division, Second Department. His appellate attorney raised one issue, namely, that the trial court improperly denied his motion to suppress physical evidence seized during the December 11, 2003 arrest. *See People v. Figueroa*, 833

N.Y.S.2d 528, 529 (App. Div. 2007). (Petition ("Pet.") at App'x 5.) On March 20, 2007, the Appellate Division rejected petitioner's argument and affirmed his conviction. *See Figueroa*, 833 N.Y.S.2d at 529-30.

Petitioner sought leave to appeal the Appellate Division's decision to the New York Court of Appeals. The application for leave to appeal was denied on May 31, 2007. *See People v. Figueroa*, 869 N.E.2d 663 (N.Y. 2007).

On May 16, 2008, petitioner filed a *pro se* motion to vacate his conviction, pursuant to New York Criminal Procedure Law § 440.10, on the ground that he received ineffective assistance of trial counsel. (Pet. at 3.) In particular, petitioner argued that his trial counsel was ineffective because he: (1) failed to object to prosecutorial misconduct; (2) failed to move for dismissal of certain counts as multiplicitous; (3) failed to challenge or rehabilitate biased venirepersons; (4) failed to object to the prosecution's elicitation of inflammatory statements from a prospective juror, and elicited further inflammatory statements from that prospective juror; (5) failed to interview a defense witness prior to testifying; (6) failed to prepare for trial and accordingly opened the door to unduly prejudicial and inadmissible hearsay evidence; (7) failed to object to improper jury instructions; and (8) failed to request a missing witness charge. On December 16, 2008, the trial court denied the motion, finding that petitioner's claim was procedurally barred under New York Criminal Procedure Law § 440.10(2)(c). *People v. Figueroa*, Ind. No. 00778-2004, slip op. at 2 (N.Y. Cnty. Ct. Suffolk Cnty. Dec. 16, 2008). The court explained that each of petitioner's arguments was "based on information . . . contained within the record of the proceeding" and was "of a

nature which can be raised on direct appeal," thus requiring the court to deny petitioner's application in its entirety. *Id.* On March 30, 2009, the trial court denied petitioner's motion to reargue the court's December 16 ruling. *People v. Figueroa*, No. 00778-2004, slip op. at 2 (N.Y. Cnty. Ct. Suffolk Cnty. March 30, 2009).

Petitioner applied to the Appellate Division, Second Department for leave to appeal the County Court's denial of his motion to vacate his conviction. (Pet. at 6.) In a Decision and Order dated June 11, 2009, the Appellate Division denied Figueroa's request. *People v. Figueroa*, No. 2009-00910 (Ind. No. 778-04), slip op. at 1 (N.Y. App. Div. June 11, 2009).

On March 31, 2009, petitioner submitted a *pro se* application for a writ of error *coram nobis* to the Appellate Division, Second Department, on the basis that he received ineffective assistance of appellate counsel. (Pet. at 3, 7.) Petitioner maintained that his appellate counsel was ineffective because he: (1) failed to assert that petitioner's trial counsel was ineffective, and (2) failed to raise any appellate argument or submit an *Anders* brief regarding Figueroa's November 22, 2003 arrest. (Resp't Answer ¶ 7.) On September 15, 2009, the Appellate Division denied Figueroa's application, finding that he failed to establish that he was denied effective assistance of appellate counsel. *See People v. Figueroa*, 885 N.Y.S.2d 215 (App. Div. 2009). On December 17, 2009, the Court of Appeals denied Figueroa's application for leave to appeal. (Pet. at 7.)

On December 31, 2009, petitioner submitted the instant habeas petition through the prison mailing system. (Pet. at 14.) The petition, which seeks relief on the grounds that petitioner allegedly received ineffective assistance of trial counsel and ineffective

assistance of appellate counsel, was filed with this Court on January 8, 2010. Respondent submitted his opposition on March 24, 2010, and petitioner submitted his reply on April 16, 2010. The Court has fully considered the submissions of both parties.

## II. DISCUSSION

### A. Standard of Review

To determine whether petitioner is entitled to a writ of habeas corpus, a federal court must apply the standards of review provided in 28 U.S.C. § 2254, as amended by AEDPA, which provides in relevant part:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). "'Clearly established Federal law'" is comprised of "'the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision.'" *Green v. Travis*, 414 F.3d 288, 296 (2d Cir. 2005) (quoting *Williams v. Taylor*, 529 U.S. 362, 412 (2000)).

A decision is "contrary to" clearly established federal law, as determined by the Supreme Court, "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 412-13. A decision is an "unreasonable application" of clearly established federal law if a state court "identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of [a] prisoner's case." *Id.* at 413.

AEDPA establishes a deferential standard of review: "'a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.'" *Gilchrist v. O'Keefe*, 260 F.3d 87, 93 (2d Cir. 2001) (quoting *Williams*, 529 U.S. at 411). The Second Circuit added that, while "'some increment of incorrectness beyond error is required . . . the increment need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence.'" *Gilchrist*, 260 F.3d at 93 (quoting *Francis S. v. Stone*, 221 F.3d 100, 111 (2d Cir. 2000)). Finally, "if the federal claim was not adjudicated on the merits, 'AEDPA deference is not required, and conclusions of law and mixed findings of fact and conclusions of law are reviewed *de novo*.'" *Dolphy v. Mantello*, 552 F.3d 236, 238 (2d Cir. 2009) (quoting *Spears v. Greiner*, 459 F.3d 200, 203 (2d Cir. 2006)).

## B. Procedural Default

A petitioner's federal claims may be procedurally barred from habeas corpus review if they were decided at the state level on "independent and adequate" state procedural grounds. *Coleman v. Thompson*, 501 U.S. 722, 729-33 (1991). The procedural rule at issue is adequate if it is "firmly established and regularly followed by the state in question." *Garcia v. Lewis*, 188 F.3d 71, 77 (2d Cir. 1999) (internal quotation marks omitted). To be independent, the "state court must actually have relied on the procedural bar as an independent basis for its disposition of the case," *Harris v. Reed*, 489 U.S. 255, 261-62 (1989), by "clearly and expressly stat[ing] that its judgment rests on a state procedural bar." *Id.* at 263 (internal quotation marks omitted). If it determines that a claim is procedurally barred, a federal habeas court may not review the claim on the merits unless the petitioner can demonstrate both cause for the default and prejudice resulting therefrom, or if he can demonstrate that the failure to consider the claim will result in a miscarriage of justice. *See Coleman*, 501 U.S. at 750. A miscarriage of justice is demonstrated in extraordinary cases, such as where a constitutional violation results in the conviction of an individual who is actually innocent. *Murray v. Carrier*, 477 U.S. 478, 496 (1986).

Here, petitioner's first claim for ineffective assistance of trial counsel is procedurally defaulted. Petitioner raised this claim solely in a New York Criminal Procedure Law § 440.10 motion, which was rejected on procedural grounds because the claims should have been raised on direct appeal.

New York law requires a court to deny a collateral attack on a conviction where the defendant unjustifiably fails to raise his claim on direct appeal, despite having had a sufficient record to do so. *See* N.Y. Crim. Proc. L. § 440.10(2)(c). As explained by the Second Circuit, "[t]he purpose of this rule 'is to prevent [Section] 440.10 from being employed as a substitute for direct appeal when [the] defendant was in a position to raise an issue on appeal . . . or could readily have raised it on appeal but failed to do so.'" *Sweet v. Bennett*, 353 F.3d 135, 139 (2d Cir. 2003) (quoting *People v. Cooks*, 491 N.E.2d 676, 678 (N.Y. 1986)). In many cases, ineffective assistance of counsel claims are not apparent on the trial record and, therefore, are more appropriately raised in a collateral attack on the conviction where a court can conduct an "evidentiary exploration" of counsel's effectiveness. *People v. Brown*, 382 N.E.2d 1149, 1149 (N.Y. 1978). For example, claims based upon faulty legal advice rarely will be evident on the face of the record. *See People v. Harris*, 491 N.Y.S.2d 678, 687 (App. Div. 1985) ("The instant claim of ineffective assistance, predicated entirely, as it is, upon alleged faulty legal advice given by counsel, appears to be one preeminently necessitating CPL article 440 review.").

However, where the basis for an ineffective assistance of counsel claim was clear from the face of the record and thus could have been raised on direct appeal, a defendant's § 440.10 motion must be denied. The Second Circuit has made clear that a denial of a § 440.10 motion for failure to raise a claim on direct appeal constitutes an "independent and adequate" state procedural ground which, accordingly, bars federal habeas review of a petitioner's claims. *See Sweet*, 353 F.3d at 140 (finding a claim waived under § 440.10(2)(c) to be "procedurally defaulted for the purposes of habeas review as well"); *Aparicio v. Artuz*, 269 F.3d 78, 93 (2d Cir. 2001) ("[T]here can be no doubt that the state court's decision on Petitioner's trial counsel claim rested on an

adequate and independent state bar: Aparicio never raised ineffective assistance of trial counsel in his direct appeal. . . . New York law prohibits review of a claim on collateral review when the defendant unjustifiably fails to raise the claim on direct appeal. N.Y. Crim. Proc. L. § 440.10(2)(c)."); *Levine v. Comm'r of Corr. Servs.*, 44 F.3d 121, 126 (2d Cir. 1995) (federal habeas review unavailable where state court found claim to be procedurally barred under § 440.10(2)(c)).

As recognized by the trial court in this case, each of counsel's alleged failures that petitioner challenged in his § 440.10 motion were well-established on the trial record. In particular, petitioner claimed that defense counsel: (1) failed to object to prosecutorial misconduct; (2) failed to move for dismissal of certain counts as multiplicitous; (3) failed to challenge or rehabilitate biased venirepersons; (4) failed to object to the prosecution's elicitation of inflammatory statements from a prospective juror, and elicited further inflammatory statements from that prospective juror; (5) failed to interview a defense witness prior to testifying; (6) failed to prepare for trial and accordingly opened the door to unduly prejudicial and inadmissible hearsay evidence; (7) failed to object to improper jury instructions; and (8) failed to request a missing witness charge. As the trial court clearly explained when denying petitioner's § 440.10 motion, each of petitioner's arguments was "based on information . . . contained within the record of the proceeding" and were "of a nature which can be raised on direct appeal." *People v. Figueroa*, Ind. No. 00778-2004, slip op. at 2 (N.Y. Cnty. Ct. Suffolk Cnty. Dec. 16, 2008). Thus, there was no apparent reason why appellate counsel would have needed an evidentiary hearing to develop these claims. Accordingly, because petitioner's failure to raise these claims on direct appeal

was unjustifiable, thus resulting in the denial of his § 440 motion, the claims he raises here based upon the same failures of trial counsel are procedurally defaulted for federal habeas purposes. *See Sweet*, 353 F.3d at 140 (finding ineffective assistance claim procedurally defaulted where counsel's failure to object to jury instructions was clear from the record); *Muir v. New York*, No. 07-cv-7573, 2010 WL 2144250, at *6 (S.D.N.Y. May 26, 2010) (finding ineffective assistance claim clear on the record and procedurally barred where counsel was alleged to have failed to challenge (1) defect in jurisdiction in indictment, (2) prosecution's presentation of duplicative charges to grand jury, (3) police procedure for identification of defendant, and (4) violation of defendant's speedy trial rights).

Respondent, however, has not relied on this procedural default in opposing the petition. Although this Court has the authority to raise the issue *sua sponte*, *see Washington v. James*, 996 F.2d 1442, 1448 (2d Cir. 1993), the Second Circuit has advised that courts "should not lightly raise the issue of a [petitioner's] procedural default *sua sponte*." *Rosario v. United States*, 164 F.3d 729, 733 (2d Cir. 1998). Accordingly, in an abundance of caution, and because petitioner has not had an opportunity to show cause for the default, the Court has reviewed the merits of petitioner's ineffective assistance of trial counsel claim, as well as his ineffective assistance of appellate counsel claim, and finds that neither warrants habeas relief on the merits.

## C. Merits

### 1. Ineffective Assistance of Trial Counsel

Petitioner contends that he received ineffective assistance of trial counsel

because counsel: (1) failed to strike biased venirepersons from the jury; (2) opened the door to prejudicial, inadmissible hearsay while cross-examining Detective Maldonado; (3) failed to object to an incomplete jury instruction; (4) failed to request a missing witness charge for Detective Hamilton; (5) failed to impeach Detective Walker and deliver an adequate summation; (6) failed to object to the prosecution's improper summation; and (7) failed to move to dismiss counts 5 and 6 as multiplicitous. (Pet. at 17-32.)[1]

Under the standard promulgated in *Strickland v. Washington*, 466 U.S. 668 (1984), a petitioner is required to demonstrate two elements in order to state a successful claim for ineffective assistance of counsel: (1) "counsel's representation fell below an objective standard of reasonableness," *id.* at 688, and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

The first prong requires a showing that counsel's performance was deficient. However, "[c]onstitutionally effective counsel embraces a 'wide range of professionally competent assistance,' and 'counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'" *Greiner v. Wells*, 417 F.3d 305, 319 (2d Cir. 2005) (quoting *Strickland*, 466 U.S. at 690). The performance inquiry examines the reasonableness of trial counsel's actions under all circumstances, keeping in mind that a "fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight." *Greiner*, 417 F.3d at 319 (quoting *Rompilla v. Beard*, 545 U.S. 374, 408 (2005)). In assessing performance, a court must apply a "'heavy measure of deference to counsel's judgments.'" *Greiner*, 417 F.3d at 319 (quoting *Strickland*, 466 U.S. at 691). "A lawyer's decision not to pursue a defense does not constitute deficient performance if, as is typically the case, the lawyer has a reasonable justification for the decision." *DeLuca v. Lord*, 77 F.3d 578, 588 n.3 (2d Cir. 1996), and "'strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable.'" *Id.* (quoting *Strickland*, 466 U.S. at 690). Moreover, "'strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation.'" *DeLuca*, 77 F.3d at 588 (quoting *Strickland*, 466 U.S. at 690-91).

The second prong focuses on prejudice to the petitioner. The petitioner is required to show that there is a "reasonable

---

[1] The Court notes that it appears petitioner did not raise the argument that counsel failed to deliver an adequate summation in either petitioner's direct appeal or his § 440.10 motion. "It is well settled that a claim of ineffective assistance is properly exhausted only when the specific conduct giving rise to the claim is first asserted in state court." *Diaz v. Conway*, No. 04-cv-5062 (RMB) (HBP), 2008 WL 2461742, at *13 (S.D.N.Y. June 17, 2008); *see also Caballero v. Keane*, 42 F.3d 738, 740 (2d Cir. 1994) ("[T]o reach the merits of [an ineffective representation claim], all of [the] allegations must have been presented to the state courts. . . ."). Respondent, however, has apparently waived this exhaustion defense. (Resp't Answer at ¶ 8), and regardless, the Court would have to evaluate trial counsel's effectiveness in relation to petitioner's ineffective assistance of appellate counsel claim. Accordingly, the Court has examined each of petitioner's claims on the merits and, as explained *infra*, has found none can serve as a basis for habeas relief.

probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. In this context, "reasonable probability" means that the errors are of a magnitude such that they "'undermine[] confidence in the outcome.'" *Pavel v. Hollins*, 261 F.3d 210, 216 (2d Cir. 2001) (quoting *Strickland*, 466 U.S. at 694). "'The question to be asked in assessing the prejudice from counsel's errors . . . is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt.'" *Henry v. Poole*, 409 F.3d 48, 63-64 (2d Cir. 2005) (quoting *Strickland*, 466 U.S. at 695).

"'An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment.'" *Lindstadt v. Keane*, 239 F.3d 191, 204 (2d Cir. 2001) (quoting *Strickland*, 466 U.S. at 691). Moreover, "[u]nlike the determination of trial counsel's performance under the first prong of *Strickland*, the determination of prejudice 'may be made with the benefit of hindsight.'" *Hemstreet v. Greiner*, 491 F.3d 84, 91 (2d Cir. 2007) (quoting *Mayo v. Henderson*, 13 F.3d 528, 534 (2d Cir. 1994)).

This Court proceeds to examine the petitioner's claims, keeping in mind that the habeas petitioner bears the burden of establishing both deficient performance and prejudice. *United States v. Birkin*, 366 F.3d 95, 100 (2d Cir. 2004).

a. Failure to Strike Biased Venirepersons

Petitioner argues that he received ineffective assistance of counsel because counsel failed to remove two jurors during voir dire who allegedly could not be fair and impartial. (Pet. at 17.) Specifically, he claims that his attorney's failure to challenge Juror Regan and Juror Flick for cause, or exercise peremptory challenges to excuse either juror, amounted to ineffective assistance of counsel. (*Id.*) The Court will first address the failure of defense counsel to challenge either Juror Regan or Juror Flick for cause. The Court will then address the failure of defense counsel to use a peremptory challenge on either Juror Regan or Juror Flick. For the reasons set forth below, this Court finds that there is no basis to conclude that the *Strickland* standard has been met.

i. Failure to Challenge Juror Regan or Juror Flick for Cause

Petitioner's claim that counsel's failure to challenge Juror Regan or Juror Flick amounted to ineffective assistance of counsel is without merit. Petitioner has failed to show that the decision not to challenge Juror Regan or Juror Flick for cause was outside the "wide range of professionally competent assistance." *See Strickland*, 466 U.S. at 690.

Although Juror Flick and Juror Regan initially expressed reservations about their ability to be fair and impartial, the Second Circuit has held that if, after expressing reservations about impartiality, a juror later promises to try to decide the case based on the evidence presented, that assurance will generally be sufficient for both the attorney and the court. *United States v. Towne*, 870 F.2d 880, 885 (2d Cir. 1989).

Here, Juror Flick indicated during voir dire that she had concerns about her ability to remain fair and impartial due to her family's history with drug addiction. (JVD-

$2^2$ at 49.) Specifically, Juror Flick stated, "I definitely have viewpoints on [drugs and addiction] because I lived – I have seen so much," and, when asked by the prosecutor whether she would bring those experiences into the jury room when deliberating, she responded, "I would try not to, but I can't – like, if you bring a little kid in here . . ." (*Id.* at 50-51.) At this point, the trial court intervened in the questioning and asked, "Nobody is asking you to walk in here totally blank. You will bring in your life experiences. I want to know, though, can you follow the law as I give it to you and will you be fair and impartial?" (*Id.* at 51.) To this question, Juror Flick answered unequivocally, "Yes." (*Id.*) Given this record, even if defense counsel challenged Flick for cause, there is no indication that such an application would have been granted. Accordingly, trial counsel's decision not to make such a challenge was reasonable. *See Towne*, 870 F.2d at 885 (concluding that district court did not err in failing to remove prospective juror for cause where juror initially expressed reservations about ability to be impartial but later promised to try to decide the case based on the evidence presented); *United States v. Ploof*, 464 F.2d 116, 117-18 (2d Cir. 1972) (upholding the denial of challenge for cause where a juror indicated he would do his best to decide the case based on the evidence presented).

Juror Regan also initially expressed reservations about her ability to remain fair and impartial. In particular, in response to questioning from defense counsel whether any juror would hold Figueroa's decision not to testify against him, Regan stated, "I kind of think it makes him look a little more guilty for not testifying. Like [the other juror] said, what does he have to hide?" (JVD-1$^3$ at 177.) The trial court then responded "all right," and defense counsel proceeded to educate the jury about the constitutional principles underlying a defendant's right not to testify. (*Id.* at 177-79.) Subsequently, defense counsel asked the potential jurors, "If [the prosecutor] fails to prove her case beyond a reasonable doubt, if she doesn't satisfy every single element of every single crime charged, do you promise to return a verdict of not guilty? Is there anybody who wouldn't be able to do that?" (*Id.* at 191.) No juror, including Regan, objected. Trial counsel again asked, "You all promise me that?" (*Id.*) No juror expressed any reservations.

As with Juror Flick, the Court finds that it was not unreasonable for trial counsel to decline to challenge Juror Regan for cause. First, the record indicates that trial counsel was actively engaged in the voir dire process. In particular, following Juror Regan's expression of reservation, defense counsel educated the jury about the prosecution's burden and the defendant's right not to testify. For example, defense counsel explained,

> That constitutionally based principle, that if you're accused of something, the government accuses you of something, they bring all their resources and power to prosecute you, to level the playing field, the constitution says you are innocent until you are proven guilty beyond a reasonable doubt. Now, the Judge instructs you on the law. He instructs you on what beyond a reasonable doubt means. That's not our job. But does everybody else

---

[2] "JVD-2" refers to the transcript of the second day of jury voir dire proceedings, held on January 11, 2005.

[3] JVD-1 refers to the transcript of the first day of jury voir dire proceedings, held on January 10, 2005.

understand that? And almost embrace it, I guess. It's extremely important. It's critical to Mr. Figueroa at this point in his life.

(*Id.* at 177-78.) Counsel further stressed that "Mr. Figueroa does not have to testify. I keep repeating myself, because it's just so important." (*Id.* at 179.) Juror Regan did not indicate that she did not understand these principles or that she would not be able to follow them as a juror.

Moreover, defense counsel asked the jury a number of follow-up questions after Juror Regan expressed her initial reservation. By way of example, defense counsel asked the jury:

I want you to think about something else. If you were sitting at this table right now, or your loved one was sitting at this table right now, would you want you sitting in this jury box? Would you want yourself sitting in judgment of yourself or a loved one who is sitting here, based upon your mind set right now, or do you think based upon a person's right not to testify, based on the fact that the district attorney decided to present the case to a grand jury, based on the fact that you are just here, that you would not want to sit in judgment of yourself right now; is there anybody who would have a problem with that?

(*Id.* at 178.) Although another juror expressed reluctance to sit on the jury in response to this line of questioning, Juror Regan did not indicate that she had any reservations. (*Id.* at 178-79.) Subsequently, defense counsel reiterated:

Everybody here understand[s], and I will repeat it one more time, that at

this stage of the game, the point we are at right now, Mr. Figueroa is innocent, he's done nothing. And the burden is always on the government, it remains on the government, it never shifts. And he could remain silent throughout the course of the proceedings.

(*Id.* at 188.) Juror Regan did not give any indication that she harbored any lingering reservations. Furthermore, defense counsel also questioned the jurors regarding their ability to impartially evaluate testimony from police officers, and again, while some jurors stated that they were unsure of their impartiality, Juror Regan did not express any reservations. (*Id.* at 179-82, 186-88.) Finally, as noted *supra*, defense counsel concluded:

I just want one assurance and I'm finished. If [the prosecutor] fails to prove her case beyond a reasonable doubt, if she doesn't satisfy every single element of every single crime charged, do you promise to return a verdict of not guilty? Is there anybody who wouldn't be able to do that? Anybody? You all promise me that? Okay, thank you.

(*Id.* at 191.) Juror Regan did not state that she had any reservations or hesitations regarding her ability to hold the prosecution to its burden. The significance of the fact that Juror Regan did not express any further reservations is highlighted by contrast to the responses of Prospective Juror Number 15 ("Juror 15"), who continued to express reservations and consequently was challenged for cause by defense counsel. Specifically, after both Juror Regan and Juror 15 expressed their initial reservations, Juror 15 continued to indicate that she could not be impartial, noting that she might have a problem sitting in judgment of herself or a

loved one based on the fact that prosecution had brought the case. (JVD-1 at 177-79.) Juror 15 expressed that she might have difficulty sitting as a juror "[j]ust because of the way I feel, my own feelings, you know. Not that it's something personal, you know what I mean? But like I said, if there was something that they were trying, you know, not to—not to prove." (*Id.* at 178-79.) Ultimately, defense counsel challenged Juror 15 for cause. (*Id.* at 196.)

In this case, counsel's active participation in voir dire indicates that any decisions to challenge (or not to challenge) jurors were made as part of a reasonable trial strategy, rather than as a result of counsel's failure to provide effective assistance. *See Warrick v. McLaughlin*, No. 02-cv-7638 (DLC), 2004 WL 1656579, at *4 (S.D.N.Y. July 22, 2004) ("[T]he record reflects that defense counsel was actively engaged in the voir dire process. An attorney's determination to accept or strike a prospective juror is a strategic or tactical decision. . . . Actions or omissions by counsel that might be considered sound trial strategy do not constitute ineffective assistance. Thus, since [petitioner's] objection has no basis in fact, it is properly rejected." (internal quotation marks and citations omitted)).

Indeed, this conclusion is strengthened by the fact that counsel challenged for cause two prospective jurors on the grounds that they believed they needed to hear petitioner testify (JVD-1 at 196), thereby showing that trial counsel was aware not only of his ability to make such an application, but also of the risk that potentially biased jurors could pose to a defendant in a criminal case. *See Rodriguez v. Breslin*, No. 05-cv-1639 (RRM), 2009 WL 424738, at *9 (E.D.N.Y. Feb. 20, 2009) (finding that counsel's decision to peremptorily challenge eight jurors lended support to conclusion that

decision not to challenge allegedly biased juror was part of trial strategy); *Nova v. Ercole*, No. 06-cv-562 (NRB), 2007 WL 1280635, at *8 (S.D.N.Y. Apr. 30, 2007) ("Counsel exercised two peremptory challenges for other prospective jurors during voir dire. . . . This suggests that counsel deliberately chose not to challenge [another juror] as part of trial strategy that might be considered sound." (internal quotation marks and citations omitted)). Therefore, in this case, given that defense counsel educated Juror Regan regarding the prosecution's burden and the defendant's right not to testify after Juror Regan initially expressed reservations, and given that Juror Regan did not express any further reservations when faced with numerous follow-up questions, the Court concludes that it was reasonable for defense counsel to make the strategic choice that any initial reservations expressed by Juror Regan no longer formed the basis to challenge her. Accordingly, counsel's decision not to challenge either Juror Flick or Juror Regan fell within the reasonable range of professional conduct under *Strickland*.

In any event, even assuming *arguendo* that petitioner was able to prove that the decision not to challenge Juror Regan and Juror Flick was outside the range of professional competence, petitioner cannot show that he was prejudiced thereby. In order to show prejudice, petitioner must show that the juror was actually biased against him. *See United States v. Torres*, 128 F.3d 38, 43 (2d Cir. 1997) (defining actual bias as "bias-in-fact" or "the existence of a state of mind that leads to an inference that the person will not act with entire impartiality" (internal quotation marks omitted)); *Rodriguez*, 2009 WL 424738, at *9. Petitioner has not pointed to any facts in the record that would indicate either Juror Regan or Juror Flick was actually biased against him. As to Juror Flick, the record

plainly indicates that Juror Flick unequivocally stated that she would be able to follow the law as instructed by the judge and would be fair and impartial. (JVD-2 at 51.) As to Juror Regan, petitioner offers nothing but speculation regarding her impartiality, based upon a single remark that was made before counsel educated the jurors. Indeed, when presented with numerous subsequent opportunities to state if she was still biased, Juror Regan, in contrast to other jurors, gave no indication that she would not be fair and impartial. Thus, petitioner cannot prove that he has been prejudiced by his counsel's decision not to challenge Juror Regan or Juror Flick. *See Wallace v. Artus*, No. 9:06–CV–464 (FJS/VEB), 2011 WL 1302228, at *9 (N.D.N.Y. March 31, 2011) ("[T]he record does not support a finding that [the juror] was actually biased against Petitioner. At best, [the juror's] answers to the voir dire questions were ambiguous. He stated that he had 'an opinion,' but not what that opinion was. Further, when he was asked if he could judge Petitioner's actions and the actions of others in the bar fairly, he answered that he 'could try.' In addition to the above testimony, [the juror] agreed that he would 'evenhandedly scrutinize the testimony, regardless of race, creed, age, color, garb, hairstyle, clothing, political affiliation, station in life, regardless of those factors and evenhandedly decide this case[.]' Finally, he agreed that he would 'leave sympathy and emotions out of [his] deliberations and decide it from the facts on this witness stand[.]'" (internal citations omitted)); *Beard v. Unger*, No. 06-cv-0405 (MAT), 2009 WL 5042696, at *5 (W.D.N.Y. Dec. 15, 2009) ("Even when a juror expressly doubts his or her impartiality on voir dire, a finding of actual bias is not necessarily compelled. Here, the juror never stated that he could not be fair or impartial, nor did he aver that he had personal

knowledge of petitioner's case. Because petitioner cannot establish actual bias, [defense counsel's] decision not to challenge the juror was within the realm of sound trial strategy." (internal citations omitted)); *accord Hughes v. United States*, 258 F.3d 453, 458 (6th Cir. 2001) ("A juror's express doubt as to her own impartiality on voir dire does not necessarily entail a finding of actual bias. The Supreme Court has upheld the impaneling of jurors who had doubted, or disclaimed outright, their own impartiality on voir dire." (citing *Patton v. Yount*, 467 U.S. 1025, 1032 (1984) and *Murphy v. Florida*, 421 U.S. 794, 803 (1975))).

In sum, because petitioner is unable to show either that counsel acted outside the range of professional competence when counsel did not challenge Juror Regan and Juror Flick, or that petitioner was prejudiced by the decision not to challenge Juror Regan and Juror Flick, petitioner's claim for ineffective assistance of counsel with respect to counsel's failure to challenge Juror Regan and Juror Flick for cause must fail.

ii. Decision Not To Use Peremptory Challenge on Juror Regan or Juror Flick

Petitioner also claims that he received ineffective assistance of counsel because his attorney chose not to exercise a peremptory challenge to excuse either Juror Regan or Juror Flick. (Pet. at 17-20.) The Court finds this claim to be without merit.

Petitioner has not articulated a sufficient basis to find that the decision not to use peremptory challenges on either Juror Regan or Juror Flick was outside the wide range of professional competence. *See generally Curkendall v. Mazzucca*, No. 05-CV-688S (WMS), 2008 WL 3851820, at *27 (W.D.N.Y. Aug. 15, 2008). Courts have

noted that "a contention that defense counsel was ineffective for failing to challenge a prospective juror for cause or to exercise a peremptory challenge with respect to that prospective juror does not by itself constitute ineffective assistance." *Jones v. Poole*, No. 05-CV-0886 (VEB), 2010 WL 1949599, at *33 (W.D.N.Y. May 13, 2010) (citing *People v. Turck*, 758 N.Y.S.2d 895 (App. Div. 2003)). The exercise of, or failure to exercise, a peremptory challenge may be considered trial strategy employed by the attorney. *See Curkendall*, 2008 WL 3851820, at *27; *Rodriguez*, 2009 WL 424738, at *9; *Nova*, 2007 WL 1280635, at *8.

In regards to Juror Flick, petitioner has not demonstrated any facts indicating that the decision to refrain from exercising a peremptory challenge was not trial strategy. Although she initially stated that she had some preconceived notions about drug addiction, Juror Flick unambiguously indicated, in response to direct questions, that she could follow the law as instructed by the judge and could be fair and impartial. (JVD-2 at 49-51.)

Similarly, with respect to Juror Regan, petitioner has failed to show that defense counsel's decision to refrain from using a peremptory challenge against Regan was not trial strategy. Juror Regan had stated in response to questioning from the prosecution that she could be fair and impartial toward both the government and Figueroa (JVD-1 at 119, 135), and, after her initial hesitation that petitioner's failure to testify "might" make him appear guilty, she did not express any reservations in response to trial counsel's subsequent questioning of the jury pool. (*Id.* at 177-91). The trial judge's apparent satisfaction with Juror Regan's impartiality (*id.* at 177) lends further support to the conclusion that trial counsel's decision not to challenge Juror

Regan was reasonable. Likewise, the fact that trial counsel exercised peremptory challenges against eight other jurors indicates that his choice not to challenge Juror Flick or Juror Regan was conscious and strategic. *See Rodriguez*, 2009 WL 424738, at *9; *Nova*, 2007 WL 1280635, at *8.

Petitioner has failed to demonstrate that this strategic decision, under the circumstances of this case, was objectively unreasonable and was constitutionally defective. *See, e.g.*, *Tolliver v. Greiner*, No. 902-cv-0570 (LEK) (RFT), 2005 WL 2179298, at *6 (N.D.N.Y. Sept. 8, 2005) ("While Petitioner's recitation of the prospective juror's statement is correct, Petitioner neglects to acknowledge that the potential juror thereafter promised that he would follow the judge's instructions on the law and apply them to the facts of the case. In light of those representations, it does not appear to this Court as though defense counsel could have succeeded in having that juror stricken from the panel for cause."); *Chacko v. United States*, Nos. 96-cr-519 (JGK), 00-cv-405 (JGK), 2000 WL 1808662, at *8 (S.D.N.Y. Dec. 11, 2000) (finding trial counsel not ineffective in seeking to remove juror who assured court that she "would be able to decide the case on the facts and the law"). Even assuming *arguendo* that one could second-guess the strategic decision with hindsight, this decision does not rise to the level of a constitutional violation under *Strickland*. In addition, there is no indication on the record that petitioner requested that his attorney exercise a peremptory challenge on Juror Flick or Juror Regan.

Furthermore, as discussed above, in order to show prejudice, petitioner must show that the juror was actually biased against him. Petitioner has not pointed to any facts in the record that would indicate

that Juror Flick or Juror Regan was actually biased against him. Therefore, even assuming *arguendo* that petitioner was able to prove that his attorney's decision was outside the wide range of professional competence, petitioner was not prejudiced by the decision not to exercise peremptory challenges on Juror Flick or Juror Regan. Absent evidence of partiality or bias by the jurors that counsel did not strike, the Court concludes that counsel's failure to exercise peremptory challenges on Juror Flick and Juror Regan was counsel's trial strategy which, even if erroneous, did not rise to the level of constitutional error. *See, e.g.*, *Curkendall*, 2008 WL 3851820, at *27 (finding no Sixth Amendment claim when "the record is devoid of any evidence rebutting the presumption of impartiality of any of these jurors sufficient to warrant habeas relief"); *Diaz v. Conway*, No. 04-cv-5062 (RMB) (HBP), 2008 WL 2461742, at *28 (S.D.N.Y. June 17, 2008) (rejecting ineffective assistance argument in habeas petition based on failure to use peremptory challenges on three prospective jurors with connections to law enforcement "because petitioner offers nothing other than speculation regarding these jurors['] ability to be impartial"); *Encarnacion v. McGinnis*, No. 01-cv-0586 (GLS-VEB), 2008 WL 795000, at *12 (N.D.N.Y. Mar. 24, 2008) ("In any event, the decision not to seek the removal of the potential jurors through the exercise of a peremptory challenge is generally a strategic choice on counsel's part, which does not rise to the level of constitutional error."); *Cook v. Moore*, No. 02-cv-1375-T-23MAP, 2005 WL 2416038, at *5-7 (M.D. Fl. Sept. 30, 2005) (rejecting habeas claim that trial counsel was ineffective in failing to exercise peremptory challenges to exclude three prospective jurors who stated in voir dire that they would believe police officers over inmates if there was a conflict in the testimony); *Doleo*

*v. Reynolds*, No. 00-cv-7927, 2002 WL 922260, at *4 (S.D.N.Y. May 7, 2002) ("Strategies as to the exercise of peremptories are matters of counsel's intuition, and do not rise to the level of constitutional error."); *see also Tolliver*, 2005 WL 2179298, at *6 (collecting cases).

In sum, the Court finds no basis to conclude that petitioner received ineffective assistance of counsel due to trial counsel's failure to peremptorily challenge allegedly biased venirepersons and, thus, this claim is denied on the merits.

### b. Failure to Properly Cross-Examine Detectives Maldonado and Walker

Petitioner contends that defense counsel failed to properly cross-examine both Detective Maldonado and Detective Walker at trial. With respect to Detective Maldonado, petitioner claims that defense counsel's cross-examination opened the door to prejudicial, inadmissible hearsay. With respect to Detective Walker, petitioner claims that defense counsel failed to effectively impeach Detective Walker with statements the detective made during his Grand Jury testimony.

As an initial matter, the Court notes that "[d]ecisions which fall squarely within the ambit of trial strategy, . . . if reasonably made, will not constitute a basis for an ineffective assistance claim." *United States v. Nersesian*, 824 F.2d 1294, 1321 (2d Cir. 1987). The decision "whether to engage in cross-examination, and if so to what extent and in what manner, [is] . . . strategic in nature," and is the type of "tactical decision . . . engaged in by defense attorneys in almost every trial." *Id.* The Court will examine each of petitioner's contentions in turn.

### i. Cross-Examination of Detective Maldonado

Petitioner asserts that defense counsel's cross-examination of Detective Maldonado elicited highly prejudicial and otherwise inadmissible testimony. (Pet. at 21-22.) Specifically, trial counsel asked "[a]t any time did you take any statement from Mr. Schwab [on December 11, 2003]?" (Tr. at 81.) Maldonado responded, "I took, um, one statement related to his purchase of narcotics." (*Id.*) Trial counsel asked whether Detective Maldonado ever provided this statement to the D.A.'s Office, and Maldonado explained that he had not done so because the case was not assigned to him. (*Id.*) When the prosecution objected to this line of questioning, trial counsel noted "[i]t wasn't the Rosario." (*Id.*) After further questioning, Maldonado gave the following testimony:

> Q: Detective, do you know what the contents of that statement were?
>
> A: Yes.
>
> Q: Do you know what they were regarding? Was it regarding what you thought was a hand-to-hand transaction between Mr. Figueroa and Mr. Schwab?
>
> A: From what I recall . . . Mr. Schwab indicated he called Mr. Figueroa up and told him he wanted to purchase some narcotics . . . and subsequently Mr. Figueroa showed up at [Mr. Schwab's] house and sold him $50 worth of crack cocaine.

(*Id.* at 82.) Trial counsel again asked whether Maldonado turned this statement over to the district attorney's office, to which Maldonado responded that he gave the statement to Detective Walker. (*Id.*) On redirect, the prosecution elicited further testimony regarding Schwab's statement that he purchased crack cocaine from Figueroa. (*Id.* at 99.)

Subsequently, outside the presence of the jury, defense counsel argued that Schwab's statements were *Rosario* material that the prosecution failed to turn over to the defense. (*Id.* at 150.) Defense counsel argued that the prosecution's error in not turning over the statement was "exacerbated by the fact that the detective basically testified to the contents of that statement." (*Id.*) The trial court, however, disagreed, noting that defense counsel opened the door to the hearsay statements. (*Id.*) Defense counsel disagreed with the court, and proceeded to make a record regarding his *Rosario* objection. (*Id.* at 150-51.)

The Court finds petitioner has failed to demonstrate that defense counsel's cross-examination of Detective Maldonado fell outside the "wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. The trial record demonstrates that counsel's decision to elicit testimony from Maldonado about Schwab's statements was part of a strategy designed not only to show that the prosecution engaged in improper *Rosario* violations, but also to undermine the police's credibility by highlighting their failure to turn over relevant evidence to the defense. Trial counsel twice asked Detective Maldonado whether he had turned the statement over to the district attorney's office (Tr. at 81-82), and then placed objections on the record that he believed the statements were *Rosario* material that was improperly withheld from defense counsel. (*Id.* at 81, 150-51.) Counsel's questions regarding the contents of the statement reasonably can be construed as strategic attempts to establish that the statements in fact were relevant to Figueroa and, therefore, should have been turned over to

the defense. Indeed, had counsel succeeded in proving a *Rosario* violation, the trial court might have sanctioned the prosecution by, for example, giving an adverse inference jury charge. *See People v. Wallace*, 565 N.E.2d 471, 472 (N.Y. 1990) ("Where the People fail to exercise due care in preserving *Rosario* material, and defendant is prejudiced thereby, the [trial] court *must* impose an appropriate sanction." (emphasis in original) (internal quotation marks and citation omitted)); *People v. Dunn*, 592 N.Y.S.2d 299, 301 (App. Div. 1993) (noting that where police destroyed notes that would have constituted *Rosario* material, trial court "could have fashioned an adverse inference charge which would have been an appropriate sanction under the circumstances").

In addition, this line of questioning was consistent with counsel's overall attempt in cross-examining Maldonado to show to the jury that the police's focus on December 11, 2003 was not petitioner's actions but instead was their attempt to arrest alleged burglar Schwab. (Tr. at 80-81, 85, 89.) For example, counsel was able to establish that although Maldonado was the detective who observed the hand-to-hand transaction, he was not involved in the stop of petitioner, and, in fact, petitioner was ultimately arrested by other officers who did not observe the transaction. (*Id.* at 89-90.) Moreover, counsel was able to draw attention to inconsistencies in Maldonado's testimony about the Schwab statement itself, thereby further discrediting Maldonado's testimony. Specifically, counsel elicited testimony from Maldonado that Schwab was a heroin, rather than a cocaine, addict (*id.* at 92), thus undercutting the police's claim that Schwab said he bought cocaine from petitioner.

Thus, although counsel's cross-examination strategy could perhaps be

questioned in hindsight, the record shows that counsel's performance was not constitutionally defective. *See Singleton v. Davis*, 308 F. App'x 560, 562 (2d Cir. 2009) (finding state court did not unreasonably apply *Strickland* to find trial counsel was not ineffective where "[t]he record demonstrates that counsel's failure to object to the admission of second-hand accounts of the offense—his decision to elicit hearsay in at least one instance—was part of a strategy designed to highlight for the jury what defense counsel perceived to be an inconsistency between the victim's testimony and the physical evidence presented by the prosecution"); *Loliscio v. Goord*, 263 F.3d 178, 195 (2d Cir. 2001) ("[I]n case after case, we have declined to deem counsel ineffective notwithstanding a course of action (or inaction) that seems risky, unorthodox or downright ill-advised." (internal quotation marks and citation omitted)). Only where trial counsel's decision to elicit certain testimony was "incoherent" has the Second Circuit found counsel's performance to be unreasonable. *Id.*

In any event, even assuming *arguendo* that trial counsel's performance was objectively unreasonable, petitioner has failed to demonstrate that counsel's elicitation of hearsay testimony from Detective Maldonado prejudiced petitioner at trial. First, the prosecution's decision not to rely in its summation on Maldonado's testimony regarding Schwab's statements (Tr. at 270-79) indicates that petitioner was not prejudiced by the testimony. *See Loliscio*, 263 F.3d at 195-96 ("[T]he prosecution expressly declined to rely on the [testimony in question] during its summation. We agree that this prosecution decision strongly suggests that petitioner was not prejudiced . . . ."). In addition, the prosecution presented an extensive amount of other evidence regarding petitioner's

guilt, *see* Section I.A, *supra*, thus indicating that petitioner would have been convicted even absent Maldonado's testimony regarding Schwab's statements. In light of these findings, the Court declines to hold that there is a "reasonable probability that, but for counsel's professional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

ii. Cross-Examination of Detective Walker

Petitioner also contends that defense counsel failed to properly impeach Detective Walker's testimony during cross-examination. (Pet. at 28.) On direct examination, Walker testified, "I again instructed [Figueroa] to exit the vehicle; told him to step out; I put my hand on his shoulder. I opened the door; he exited the vehicle; *and upon exiting the vehicle he immediately pressed his pelvis against the vehicle*." (Tr. at 108 (emphasis added).) This action alerted Walker to the risk that Figueroa may have been trying to hide a weapon, and therefore caused Walker to search Figueroa. (*Id.* at 109-10.)

On cross-examination, defense counsel confronted Walker with his grand jury testimony, during which Walker had testified that after petitioner stepped out of the car, "I pinned his pelvis against the vehicle." (*Id.* at 126-27.) In response, Walker stated that he had never testified that he pinned petitioner's pelvis to the vehicle and that the grand jury stenographer misinterpreted his testimony. (*Id.* at 127.) Before moving on to other topics, defense counsel confirmed with Walker that the detective's explanation for the inconsistency was that the stenographer had incorrectly recorded his testimony. (*Id.*)

Petitioner has failed to show that trial counsel's cross-examination of Walker fell below an objective standard of reasonableness. *See Strickland*, 466 U.S. at 690. By confronting Walker with the prior inconsistent statement from his grand jury testimony, defense counsel plainly highlighted the discrepancy for the jury. Having done so, trial counsel properly placed the issue before the jury, whose role it was to then evaluate Walker's credibility. *See United States v. McCourty*, 562 F.3d 458, 476 (2d Cir. 2009) ("It is the function of the jury to weigh the evidence and to assess the credibility of those witnesses who testify. It was therefore well within the purview of the jury to resolve any discrepancies in the testimony of [the police officers], testimony that [defendant] now claims was perjured."); *United States v. Byrd*, 210 F. App'x 101, 103 (2d Cir. 2006) ("Although the chief witness against [the defendant] had serious credibility problems, the jury was free to accept his explanations for prior inconsistent statements."). The conclusion that trial counsel effectively impeached Walker's testimony is supported by the fact that, after counsel highlighted Walker's inconsistent statements, counsel tried to further challenge Walker's credibility by questioning Walker on his failure to initially find a "baseball-sized quantity" of drugs during Walker's pat-down search of petitioner. (Tr. at 127-31.)

In short, the Court finds that trial counsel's cross-examination of Walker was reasonable and, therefore, cannot provide a basis for habeas relief under *Strickland*.

c. Failure to Object to the Trial Court's Jury Instruction

During jury deliberations, the jury sent out a note to the judge that stated, "We have come to an agreement on three of the seven charges, and not budging. What do we do?" (Tr. at 330.) In response, the judge brought the jury into the courtroom and instructed them, "At this stage I am going to direct you

to continue deliberations. Your luncheon order was taken and will arrive shortly. That being said, continue your deliberations." (*Id.* at 331-32.) The jury later found petitioner guilty on all seven counts. (*Id.* at 333-35.)

Petitioner contends that trial counsel was ineffective for failing to object to the trial court's instruction for the jury to "continue deliberations," rather than to "continue the deliberation *on the entire case*." (Pet. at 23.) New York Criminal Procedure Law Section 310.70 states that when a jury returns a partial verdict, the trial judge has the option of either accepting the partial verdict and ordering the jury to continue deliberations on the remaining counts or refusing to accept the partial verdict and ordering the jury "to resume its deliberation upon the entire case." N.Y. Crim. Proc .L. § 310.70(1)(b)(i)-(ii).

Petitioner cites to two cases that he argues show the trial court's instruction was improper. (Pet'r Reply at 17-18.) Each of these cases, however, is distinguishable from the instant case, and neither demonstrates that trial counsel's failure to object to the court's instruction constituted ineffective assistance. In *People v. Miller*, 558 N.Y.S.2d 591 (App. Div. 1990), the court found that the trial judge erred when he instructed the jury to resume its deliberations, but did not specify that they should continue deliberations on "the entire case." *Id.* at 592-93. The court did not state, however, that this error alone warranted reversal of the defendant's conviction. Indeed, the court in *Miller* based its decision to remand for a new trial primarily on the trial judge's decision to refuse to allow defense counsel to see the note sent out by the jury. *Id.* at 592.

Similarly, in *People v. Williams*, 494 N.Y.S.2d 563 (App. Div. 1985), although the court found that "[f]ailure to direct that deliberation be continued on the *entire* case was error," this error was harmless because the trial court ultimately accepted a partial verdict identical to the one it had originally rejected. *Id.* at 565 (emphasis in original). Thus, given that the New York Appellate Division found that the trial court's error was "of no consequence," *id.* at 564, this Court cannot infer from *Williams* that had the other errors in that case not occurred, the conviction would have been overturned solely on the basis of the incorrect instruction.

Furthermore, case authority cited by respondent indicates that failure to instruct the jury to continue deliberating on the "entire case," without more, is not enough to require reversal of a defendant's conviction. *See People v. Sykes*, 653 N.Y.S.2d 300, 300 (App. Div. 1997) (although issue was unpreserved for appellate review, trial court's instruction did not violate defendant's due process rights "since the court's charge did not limit the scope of the jury's deliberations and did not preclude it from reconsidering the count upon which it had agreed"); *People v. Freire*, 649 N.Y.S.2d 407, 407-08 (App. Div. 1996) (although issue was unpreserved for appeal, trial court did not err where "instruction neither limited the jury's discussions to the charges on which it had not reached a verdict nor precluded the jury from reconsidering the counts upon which it had already agreed"); *People v. Andujar*, 643 N.Y.S.2d 341, 341 (App. Div. 1996) (same).

In short, the failure to object to the instruction was not objectively unreasonable. In any event, petitioner has offered only mere speculation that a proper instruction would have altered the result at trial, and consequently, he has failed to show that he was prejudiced by counsel's decision not to object to the instruction.

Therefore, petitioner is not entitled to habeas relief on this ground.

### d. Failure to Request a Missing Witness Charge for Sgt. Hamilton

Next, petitioner claims that habeas relief is appropriate because trial counsel failed to request a missing witness charge for Detective Sergeant Hamilton. (Pet. at 24.) Petitioner argues that because Hamilton was the officer who found and removed the baggie containing drugs from petitioner's waistband, Hamilton was "instrumental in arresting petitioner" and, therefore, should have been called as a witness at trial. (*Id.* at 25.) Accordingly, petitioner contends that trial counsel erred in failing to request a missing witness instruction. (*Id.* at 24-28.) The Court finds this claim to be without merit.

Under New York law, a party seeking a missing witness charge must demonstrate, *inter alia*, "that the witness would provide non-cumulative testimony" that would not "merely corroborate the testimony of other witnesses." *Davis v. Mantello*, 42 F. App'x 488, 491 (2d Cir. 2002) (citing *People v. Gonzalez*, 502 N.E.2d 583 (N.Y. 1986); *People v. Keen*, 728 N.E.2d 979 (N.Y. 2000)). Here, Hamilton's testimony would have been cumulative of that given by Walker. Although Walker did not initially see the baggie when he checked petitioner's waistband for weapons, he testified that he saw the baggie once Hamilton pointed it out, and he observed Hamilton—who was standing right next to Walker—when Hamilton removed the baggie from the waistband. (Tr. 110-11.) Moreover, Hamilton handed Walker the baggie immediately after removing it and it was Walker who then secured the evidence and arrested petitioner. (*Id.* at 111.)

In light of this record, it is clear that petitioner would not have been entitled to a missing witness charge and, accordingly, trial counsel was not ineffective for failing to request such a charge. *See Davis*, 42 F. App'x at 491-92 (finding trial counsel not ineffective where testifying witness and missing witness were together throughout duration of the crime, and missing witness therefore would have added no new information).

Additionally, even assuming that petitioner was able to prove that trial counsel's decision not to request a missing witness charge was outside the range of professional competence, petitioner has not presented any evidence that the result of his trial would have been different had counsel made such a request. The record reveals that the testimony of Detectives Maldonado and Walker provided compelling evidence of petitioner's guilt. Moreover, in an attempt to undermine the prosecution's case, defense counsel reminded the jury during his summation not only of Detective Hamilton's absence, but also of the absence of several other detectives. (Tr. at 264.) Accordingly, petitioner has failed to show either that trial counsel erred in failing to request the missing witness charge or that this alleged error prejudiced petitioner in any way. *See, e.g., Brown v. Spitzer*, No. 05-CV-1553 (BMC), 2007 WL 2406870, at *3 (E.D.N.Y. Aug. 21, 2007) ("[P]etitioner's trial counsel was granted the right to argue in closing that the jury should draw an adverse inference from the failure to call [the witness], for whatever that was worth, and the cases have recognized that counsel's closing argument as to an allegedly missing witness cures the failure to charge, if one would be required."). Thus, habeas relief on this ground is unwarranted.

### e. Failure to Make a Proper Summation

The Court also construes Figueroa's petition as requesting habeas relief on the ground that trial counsel failed to give an adequate summation. (Pet. at 29.) In particular, petitioner contends that trial counsel was ineffective for: (1) failing to make any arguments about the inconsistency between Detective Walker's grand jury and trial testimony; (2) failing to "summarize defense witnesses' testimony and emphasize how it contradicted the police version about how the search [of petitioner] was conducted"; and (3) failing to make "any rational marshaling of the facts." (*Id.*) Petitioner argues that he was prejudiced by trial counsel's alleged failures because "an effective summation" could have "persuaded the jury not to convict at least on [the four charges upon which the jury initially could not reach a verdict]." (*Id.*)

In light of the "heavy measure of deference to counsel's judgments," *Greiner*, 417 F.3d at 319 (internal quotation marks omitted), trial counsel's summation did not "[fall] below an objective standard of reasonableness," *Strickland*, 466 U.S. at 694, such that habeas relief is warranted. Counsel's summation was tailored to persuade the jury not only that the prosecution had failed to meet their burden of proof, but also to cast suspicion on the methods and motives of the police. Counsel reminded the jury that the prosecution's case consisted of only four witnesses despite the involvement of other police personnel. (Tr. at 264.) Contrary to petitioner's claims, trial counsel also referenced the testimony of the two defense witnesses and described how those witnesses' testimony contradicted the police's account that petitioner was not strip searched. (*Id.* at 266-67.) Finally, throughout his summation, trial counsel repeatedly attacked the police's credibility, arguing, *inter alia*, that the detectives had an interest in the outcome of the case and lied about how they searched petitioner. (*Id.* at 267.) In light of this record, petitioner has failed to demonstrate that counsel was ineffective with regard to his summation.

Furthermore, even assuming *arguendo* that petitioner was able to prove that trial counsel's summation was inadequate, petitioner cannot show that he was prejudiced by counsel's error. Petitioner has not cited any facts from the record suggesting that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *Strickland*, 466 U.S. at 694, and, accordingly, petitioner's claim for ineffective assistance of trial counsel relating to counsel's allegedly inadequate summation must fail.

### f. Failure to Object to the Prosecution's Summation

Petitioner also alleges that trial counsel was ineffective for failing to object to statements made by the prosecution during its summation. (Pet. at 29.) Specifically, petitioner finds objectionable the prosecution's characterization of the defense's case as a "show of 'magic'" designed to deflect the jury's attention from the evidence presented by the government during trial. (*Id.* at 29-30.) The Court finds that the prosecution's summation was proper and, thus, that defense counsel's failure to object did not constitute ineffective assistance.

Improper remarks by a prosecutor during summation amount to a violation of a defendant's due process rights only where they constitute "'egregious misconduct.'" *United States v. Shareef*, 190 F.3d 71, 78 (2d Cir. 1999) (quoting *Donnelly v. De Christoforo*, 416 U.S. 637, 647 (1974)); *see*

*also Gonzalez v. Sullivan*, 934 F.2d 419, 424 (2d Cir. 1991) ("A criminal conviction 'is not to be lightly overturned on the basis of a prosecutor's comments standing alone' in an otherwise fair proceeding." (quoting *United States v. Young*, 470 U.S. 1, 11 (1985)). For a claim of prosecutorial misconduct to suffice to establish a claim of constitutional error, "it is not enough that the prosecutors' remarks were undesirable or even universally condemned." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (internal quotation marks omitted). Instead, the remarks must have "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Id.* (quoting *Donnelly*, 416 U.S. at 642).

To meet this standard, a petitioner must show that he "suffered actual prejudice because the prosecutor's comments during summation had a substantial and injurious effect or influence in determining the jury's verdict." *Bentley v. Scully*, 41 F.3d 818, 824 (2d Cir. 1994). Factors considered in determining whether a petitioner suffered such prejudice include "(1) the severity of the prosecutor's conduct; (2) what steps, if any, the trial court may have taken to remedy any prejudice; and (3) whether the conviction was certain absent the prejudicial conduct." *Id.*; *accord United States v. Thomas*, 377 F.3d 232, 245 (2d Cir. 2004).

Petitioner has not met this standard. The prosecutor's comments that the defense case was "similar [to] magic[]" designed to "direct [the jury's] attention someplace else," and was a "big, elaborate, look over here, let me abra-cadabra over here so [the jury doesn't] look at the evidence," (Tr. at 271-273), were within the bounds of reasonable argument during a summation. *See United States v. Tocco*, 135 F.3d 116, 130 (2d Cir. 1998) ("The prosecution and the defense are generally entitled to wide latitude during closing arguments, so long as

they do not misstate the evidence."); *United States v. Jaswal*, 47 F.3d 539, 544 (2d Cir. 1995) (finding no prosecutorial misconduct where prosecutor characterized defendant's case as a "fairy tale" because "[a] prosecutor is not precluded from vigorous advocacy, or the use of colorful adjectives, in summation" (internal citations and quotation marks omitted)); *Hirsch v. Plescia*, No. 03-cv-1617 (DLI), 2005 WL 2038587, at *4, *6 (E.D.N.Y. Aug. 23, 2005) (concluding that even where prosecutor called defendant "Mr. Hocus Pocus," there was no misconduct because "comments made by the prosecutor that defense counsel was misleading the jury or distorting the facts were not overly inappropriate, considering that the prosecutor was responding to similar comments from defense counsel"). Defense counsel's closing argument focused in large part on the credibility of the government's witnesses, and the prosecutor was entitled to respond accordingly. *See United States v. Bautista*, 23 F.3d 726, 733 (2d Cir. 1994) ("The government is ordinarily permitted to respond to arguments impugning the integrity of its case." (internal citations and quotation marks omitted)); *Pineda v. Miller*, No. 03-CV-1344 (NG) (MDG), 2006 WL 2239105, at *20 (E.D.N.Y. Aug. 4, 2006) ("[T]he prosecutor's comments regarding the weaknesses in petitioner's defense are proper responses to the efforts of defense counsel to attack the credibility of the undercovers.").

Consequently, the Court finds that the prosecution's summation was proper and that defense counsel therefore did not err in failing to object. *See United States v. Cohen*, 427 F.3d 164, 170 (2d Cir. 2005) ("[A]bsent any prejudicial error in the Government's summation, the failure . . . to raise an otherwise futile objection could not have rendered counsel ineffective."); *cf. People v. Nieves*, 767 N.Y.S.2d 913, 914 (App. Div. 2003) ("[A] prosecutor has broad

latitude in responding to the defense counsel's summation or commenting on the trial testimony." (internal quotation marks omitted)).

Even assuming that the prosecutor's summation was improper and that defense counsel was ineffective for failing to object, petitioner has failed to show that he was prejudiced thereby. The prosecutor's statements were brief and constituted only a small portion of her summation, the bulk of which focused instead on the weight of the evidence against petitioner. *See Miller v. Barkley*, No. 03-cv-8580 (DLC), 2006 WL 298214, at *3 (S.D.N.Y. Feb. 8, 2006) (finding no misconduct where, *inter alia*, "[t]he prosecutor's statements were brief and not a significant part of the State's argument or summation"); *Escobar v. Senkowski*, No. 02-cv-8066 (LAK/THK), 2005 WL 1307939, at *15 (S.D.N.Y. May 26, 2005) ("To render a trial fundamentally unfair . . . a prosecutor's improper comments during summation must be more than 'short and fleeting,' but must instead be 'so numerous and, in combination, so prejudicial that a new trial is required.'" (quoting *Tankleff v. Senkowski*, 135 F.3d 235, 253 (2d Cir. 1998))).

Moreover, the trial judge was able to take steps to remedy any prejudice petitioner may have been subject to as a result of the prosecutor's remarks through jury instructions, whereby the Court reminded jurors that they were not bound by the arguments of counsel as to what the evidence showed.[4] Similarly, the trial court also admonished the jurors that the burden

of proof never shifts from the prosecution. (Tr. at 291-92.) Where there is trial error, the use of a jury instruction to remedy it can serve to balance any potential prejudice. *Cf. Gonzalez*, 934 F.2d at 424. Finally, the Court finds that, as discussed *supra*, the evidence presented of petitioner's guilt was so strong that conviction virtually was certain even absent the alleged prejudicial conduct.

Accordingly, given that the prosecution's summation was proper and did not prejudice petitioner, defense counsel was not ineffective for failing to object. The Court, therefore, finds that habeas relief on this ground is unwarranted.

### g. Failure to Move to Dismiss Multiplicitous Counts of the Indictment

Petitioner asserts that trial counsel failed to object to counts five and six of the indictment as multiplicitous. (Pet. at 31.) Both counts, which charge petitioner with Criminal Possession of a Controlled Substance in the Third Degree, relate to drugs found on petitioner's body during the December 11, 2003 arrest. (*Id.*) Because the same elements were required to prove both counts, petitioner contends that count six is multiplicitous and that trial counsel erred in failing to move to dismiss it. (*Id.*) Petitioner argues that he was prejudiced by counsel's mistake because it is "readily conceivable that the number of . . . counts . . . on which the petitioner was found guilty (*i.e.* 7) played a significant role in the overall 18 year sentence imposed." (*Id.*) According to petitioner, "[r]educing the number of the counts of indictment could and should have resulted in a lesser sentence." (*Id.*)

In contrast, the government argues that the counts are not multiplicitous because they refer to quantities of cocaine that were

---

[4] The trial judge instructed the jury: "During the openings and summations the attorneys have urged you to accept their arguments and conclusions about what the evidence does and does not show. You are not bound to accept these arguments or conclusions." (Tr. at 284.)

retrieved from different locations on petitioner's body. *See* Resp't Mem. of Law at 11-12 ("[C]ount 5 referred to cocaine contained in People's Exhibit 4. . . . [which] contained the cocaine taken from petitioner's 'buttocks region.' . . . Count 6 referred to the cocaine contained in People's Exhibit 3. . . . [which] included 12 individual baggies containing cocaine." (internal citations omitted)).

Under New York law, an indictment is multiplicitous "'when a single offense is charged in more than one count.'" *Grady v. Artuz*, 931 F. Supp. 1048, 1059 n.6 (S.D.N.Y. 1996) (quoting *People v. Kaszovitz*, 640 N.Y.S.2d 721, 722 (N.Y. City Crim. Ct., Bronx Cnty. 1996)). "The primary problem is that the jury can convict on both counts, resulting in two punishments for the same crime in violation of the Double Jeopardy Clause of the Fifth Amendment." *United States v. Ansaldi*, 372 F.3d 118, 124 (2d Cir. 2004). In determining whether a single crime has been committed, "[i]t is not determinative whether the same conduct underlies the counts; rather, it is critical whether the 'offense' . . . complained of in one count is the same as that charged in another." *United States v. Chacko*, 169 F.3d 140, 146 (2d Cir. 1999) (citations omitted). Thus, "[i]n assessing whether a defendant is impermissibly charged with essentially the same offense more than once . . . the touchstone is whether Congress intended to authorize separate punishments for the offensive conduct under separate statutes." *Id.*

The Court need not resolve the issue of whether counts five and six of petitioner's indictment were multiplicitous, however, because, even assuming that they were, petitioner cannot demonstrate that he was prejudiced by counsel's failure to object. The record shows that petitioner was sentenced to concurrent terms for counts five and six, meaning that his sentence was not lengthened or impacted by the fact that he was convicted on both counts. *See People v. Vargas*, 898 N.Y.S.2d 323, 329 (App. Div. 2010) ("Nor can counsel be deemed ineffective for failing to seek dismissal of the allegedly multiplicitous counts in the indictment. Even assuming that this contention would have been found meritorious, the only remedy would be dismissal of the repetitive count or counts, which would have had no practical effect upon defendant's punishment since he received concurrent sentences on the counts at issue." (internal citations omitted)); *cf. People v. Thompson*, 823 N.Y.S.2d 602, 603 (App. Div. 2006) (holding that although claim was not preserved for appellate review, "[i]nsofar as defendant received concurrent 15-day jail sentences on each conviction under the counts at issue, and inasmuch as each of these terms was effectively subsumed within the concurrent one-year jail terms imposed in connection with the more serious charges in the indictment, dismissal of the allegedly multiplicitous counts would have no practicable effect upon defendant's punishment"); *People v. Morey*, 637 N.Y.S.2d 500, 501 (App. Div. 1996) (declining to reach claim regarding multiplicitous counts where "[i]nasmuch as defendant received concurrent sentences such a dismissal would not alter, under the circumstances of this case, the quantum of punishment meted out"). Petitioner has pointed to no facts demonstrating that his conviction on both counts five and six negatively impacted the length of sentence the trial court imposed. Thus, the Court finds that habeas relief on this ground is unwarranted.

## 2. Ineffective Assistance of Appellate Counsel

Petitioner also brings a claim of ineffective assistance of appellate counsel. Specifically, petitioner claims that appellate counsel was ineffective for: (1) failing to file any appellate argument with respect to the November 2003 arrest and conviction; (2) failing to file an *Anders* brief; and (3) failing to raise ineffective assistance of trial counsel as an issue on appeal. (Pet. at 32-40.) As set forth *infra*, these claims have no merit.

### a. Standard

A criminal defendant has the right to the effective assistance of counsel on the direct appeal of his conviction. *See Evitts v. Lucey*, 469 U.S. 387, 396 (1985). In determining whether appellate counsel has rendered constitutionally effective assistance, courts will apply the same standard established in *Strickland v. Washington*, 466 U.S. 668 (1984), for analyzing such claims as to trial counsel. *See, e.g., Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994). As noted *supra*, under the *Strickland* standard, a petitioner alleging ineffective assistance of appellate counsel must prove both that: (1) appellate counsel was objectively unreasonable in failing to raise a particular issue on appeal, and (2) absent counsel's deficient performance, there was a reasonable probability that the defendant's appeal would have been successful. *See Aparicio v. Artuz*, 269 F.3d 78, 95 (2d Cir. 2001); *Mayo*, 13 F.3d at 533-34.

Appellate counsel "need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal." *Smith v. Robbins*, 528 U.S. 259, 288 (2000) (citing *Jones v. Barnes*, 463 U.S. 745 (1983)). As the Supreme Court has noted, "[t]his process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Jones*, 463 U.S. at 751-52); *accord Sellan v. Kuhlman*, 261 F.3d 303, 317 (2d Cir. 2001). Thus, reviewing courts should not "second-guess" the reasonable professional judgments of appellate counsel as to the most promising appeal issues. *Jones*, 463 U.S. at 754; *accord Jackson v. Leonardo*, 162 F.3d 81, 85 (2d Cir. 1998). Instead, as the Second Circuit has instructed:

> [T]he district court must examine the trial court record to determine whether appellate counsel failed to present significant and obvious issues on appeal. Significant issues which could have been raised should then be compared to those which were raised. Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome.

*Mayo*, 13 F.3d at 533 (quoting *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1985)).

Under the second prong of the *Strickland* test, a petitioner is required to show that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "'Reasonable probability'" means that the errors were of a magnitude such that they "'undermine[] confidence in the outcome.'" *Pavel v. Hollins*, 261 F.3d 210, 216 (2d Cir. 2001) (quoting *Strickland*, 466 U.S. at 694).

For the reasons set forth below, petitioner's claims are without merit.

### b. Analysis

As a threshold matter, the Court notes that petitioner's ineffective assistance of appellate counsel arguments were rejected by the Appellate Department in petitioner's writ of error *coram nobis* application. In its opinion denying the writ, the Appellate Division found that petitioner "failed to establish that he was denied the effective assistance of appellate counsel." *People v. Figueroa*, 885 N.Y.S.2d 215, 215 (App. Div. 2009) (citing *Jones*, 463 U.S. 745 and *People v. Stultz*, 2 N.Y.3d 277 (N.Y. 2004)). Thus, petitioner's claims are properly exhausted. Moreover, because the Appellate Division's decision is an "adjudicat[ion] on the merits," *see* 28 U.S.C. § 2254(d), it is entitled to the deferential standard of review under AEDPA. *See Sellan*, 261 F.3d at 314 (finding that Appellate Division adjudicated petitioner's inneffective assistance of counsel claim on the merits by denying motion for a writ of *coram nobis*, even though denial did not refer to Sixth Amendment or federal case law).

### i. Failure to Raise Any Appellate Argument Regarding the November 2003 Arrest and Conviction

In support of his claim, petitioner contends that appellate counsel was ineffective for failing to raise any appellate argument relating to the November 22, 2003 arrest. (Pet. at 32.) As evidence that this omission was not strategy, petitioner states that appellate counsel "had practically no experience at all as a criminal appellate attorney" and that he "lacked the time, energy and staff to perfect the appeal in an adequate fashion." (*Id.* at 33.) Petitioner relies in particular on appellate counsel's February 14, 2006 affirmation submitted in support of petitioner's motion for assignment of new counsel. (*Id.*) In that affirmation, counsel stated that his view of petitioner's case was in "conflict" with petitioner's, and that he saw "no reason not to grant" petitioner's request for new counsel. (Pet. at App'x 5.) Appellate counsel stated that he had limited time to devote to petitioner's appeal, that he was a sole practitioner working mostly in family court and had worked on only one criminal appeal in the past, and that he was planning to request that his name be removed from the list of attorneys who were willing to accept appointments as criminal appellate counsel. (*Id.*) On April 20, 2006, appellate counsel filed an additional letter with the Appellate Division in which he noted that several problems had "slowed the production of the brief," and that he would attempt to give a copy of the brief to his client by June 15, 2006. (*Id.*) Counsel ultimately filed his brief on behalf of petitioner on July 10, 2006, arguing that the trial court erred in denying petitioner's motion to suppress the evidence seized during the December 2003 arrest. (*Id.*)

As discussed above, appellate counsel was not obligated to raise every nonfrivolous argument that petitioner wished to pursue. *See Evitts*, 469 U.S. at 394; *Jones*, 463 U.S. at 751-52; *Aparicio*, 269 F.3d at 95; *Mayo*, 13 F.3d at 533. Indeed, to satisfy the first prong of the *Strickland* standard, petitioner must do more than show that counsel "omitted a nonfrivolous argument," *Mayo*, 13 F.3d at 533 (citing *Jones*, 463 U.S. at 754). Instead, a petitioner "may establish constitutionally inadequate performance if he shows that counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker." *Mayo*, 13 F.3d at 533.

Petitioner has utterly failed to demonstrate a single claim that counsel could have raised in regard to the November 2003 arrest. Rather than citing any facts or

law that would have provided grounds to appeal, petitioner instead makes vague assertions that appellate counsel should have divined some argument regarding the fairness of the trial or the circumstances of petitioner's November arrest. (Pet. at 32-35.) Although petitioner is correct that appellate counsel relied upon an incorrect standard of law in making the one argument he raised on appeal, *see Figueroa*, 833 N.Y.S.2d at 529-30 (rejecting argument that police did not have probable cause to make December 11, 2003 stop on grounds that police did not need probable cause but instead only needed reasonable suspicion), petitioner has not pointed to any "significant and obvious issues," *Mayo*, 13 F.3d at 533, that counsel could have pursued in the alternative. Accordingly, the Court concludes that the Appellate Division's ruling rejecting petitioner's claim of ineffective assistance of appellate counsel was not contrary to, or an unreasonable application of, clearly established federal law, nor was it based on an unreasonable determination of the facts.

Furthermore, even assuming *arguendo* that counsel's omission was an exercise of unreasonable professional judgment, petitioner fails to satisfy the second prong of the *Strickland* standard. There is no basis to conclude that an argument raised in relation to the November 2003 arrest would have been successful, given the lack of support in the record for such a claim. Thus, petitioner has failed to show that there was a reasonable probability that his appeal would have been successful absent appellate counsel's alleged deficient performance. Petitioner's claim for habeas relief on this ground is denied.

### ii. Failure to File an *Anders* Brief

Petitioner contends that if appellate counsel's failure to raise any arguments regarding the November 2003 arrest was because counsel believed those claims to be frivolous, then counsel should have filed an *Anders* brief "referring to anything in the record that might arguably support the appeal." (Pet. at 35.)

Petitioner, however, has misapplied the Supreme Court's holding in *Anders v. California*, 386 U.S. 738 (1967) to the circumstances of this case. Under *Anders*, "where a court-appointed lawyer finds his or her client's claims on appeal to be 'wholly frivolous,' the lawyer may so advise the court and request permission to withdraw." *United States v. Ibrahim*, 62 F.3d 72, 73 (2d Cir. 1995) (quoting *Anders*, 386 U.S. at 744). Counsel must accompany his request to withdraw with what has become known as an "*Anders* brief" that "refer[s] to anything in the record that might arguably support the appeal." *Anders*, 386 U.S. at 744; *see also People v. Saunders*, 384 N.Y.S.2d 161, 161 (App. Div. 1976) ("Upon finding his case to be wholly frivolous, after a conscientious examination of the record, counsel should so advise the Court and request permission to withdraw. Such request should be accompanied by a brief reciting the underlying facts and highlighting anything in the record that might arguably support the appeal.")

Where a defendant has requested that his appellate counsel file an appeal, but counsel failed to either file an appeal or file an *Anders* brief, ineffective assistance of counsel is presumed. *See Cusano v. United States*, No. 05-cv-7177 (WHP), 2007 WL 4142771, at *4 (S.D.N.Y. Nov. 16, 2007) ("Counsel must either proceed with the appeal or, if he believes the basis for it is frivolous, submit a brief referring to anything in the record that might arguably support it. . . . Failure to take either course of action is per se ineffective assistance of counsel . . . ." (internal citations, quotation

marks, and alterations omitted)); *United States v. Mercado*, No. 01-cr-674 (DLC), 2002 WL 31619032, at *2 (S.D.N.Y. Nov. 20, 2002) ("Where counsel has not filed an appeal but has been asked by the defendant to do so, ineffective assistance is presumed. If appellate counsel believes that an appeal is meritless but has been asked by her client to appeal, she must inform the court of her belief, seek permission to withdraw, and file an *Anders* brief." (internal citations omitted)).

As these cases indicate, an *Anders* brief is only required when appellate counsel decides that there is *no* basis upon which to appeal defendant's conviction, and therefore decides that he will not file *any* brief at all on a defendant's behalf. Such are not the facts of the instant case. As described *supra*, appellate counsel did file an appeal on petitioner's behalf, arguing that the trial court erred in denying petitioner's motion to suppress. Moreover, although appellate counsel noted in his February 2006 affirmation that his views of the case were in "conflict" with petitioner's views, he did not indicate that he thought an appeal would be wholly frivolous. (Pet. at App'x 5.) Instead, appellate counsel based his request to withdraw primarily on his lack of criminal appellate experience and the lack of time he had to devote to the matter. (*Id.*) Finally, petitioner has not presented any facts indicating that he requested at the time of his appeal that his appellate counsel raise arguments related to his November 2003 arrest.

Accordingly, the presumption of ineffective assistance that can be triggered when appellate counsel fails to file an *Anders* brief is not applicable here. The Court concludes that the Appellate Division's ruling finding no ineffective assistance of appellate counsel was neither contrary to, nor an unreasonable application of, clearly established federal law, nor was it based on an unreasonable determination of the facts. Thus, habeas relief on this ground is denied.

### iii. Failure to Raise Ineffectiveness of Trial Counsel on Appeal

Petitioner argues that appellate counsel was ineffective for failing to challenge trial counsel's effectiveness.[5] (Pet. at 36.) As discussed extensively *supra*, trial counsel's performance was not deficient. Indeed, the record reveals that petitioner received meaningful representation. In any event, there was no prejudice from any of the alleged deficiencies of trial counsel. Thus, any claim for ineffective assistance of trial counsel would not have prevailed on appeal, and, therefore, appellate counsel did not err in failing to raise such a claim. Consequently, petitioner cannot demonstrate that these "ignored" issues were stronger than those presented on appeal, and therefore, his appellate counsel did not err in failing to challenge the actions of trial counsel. Federal courts should not "second-guess reasonable professional judgments" by appellate attorneys as to what are the most promising issues for appellate review. *Jones*, 463 U.S. at 754.

Moreover, as noted above, petitioner cannot demonstrate that he was prejudiced

---

[5] As discussed in Section II(C), *infra*, petitioner argues that trial counsel was ineffective for: (1) failing to strike biased venirepersons from the jury; (2) opening the door to prejudicial, inadmissible hearsay while cross-examining Detective Maldonado; (3) failing to object to an incomplete jury instruction; (4) failing to request a missing witness charge for Detective Hamilton; (5) failing to impeach Detective Walker and deliver an adequate summation; (6) failing to object to the prosecution's improper summation; and (7) failing to dismiss counts five and six as multiplicitous.

by appellate counsel's failure to raise ineffective assistance of trial counsel on appeal, because, for the same reasons just discussed, any challenge to trial counsel's efficacy would have been without merit.

Accordingly, this Court cannot conclude that the finding that petitioner received effective assistance of counsel was contrary to, or an unreasonable application of, clearly established federal law, or that it was based on an unreasonable determination of the facts. Petitioner's application for habeas relief on this ground is denied.

III. CONCLUSION

For the foregoing reasons, petitioner has demonstrated no basis for relief under 28 U.S.C. § 2254. Petitioner has failed to point to any state court ruling that was contrary to, or an unreasonable application of, clearly established federal law, or that resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. The Court has reviewed all of petitioner's claims and finds them to be without merit. Therefore, the petition for a writ of habeas corpus is denied. Because petitioner has failed to make a substantial showing of a denial of a constitutional right, no certificate of appealability shall issue. *See* 28 U.S.C. § 2253(c)(2). The Clerk of the Court shall enter judgment accordingly and close the case.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: May 13, 2011
Central Islip, New York

***

Petitioner is proceeding *pro se*. Respondent is represented by Rosalind C. Gray, Assistant District Attorney, Suffolk County District Attorney's Office, 200 Center Drive, Riverhead, New York 11901.